UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RANDALL BENDERSON and
BENDERSON DEVELOPMENT
COMPANY, LLC,

                              Plaintiffs,

            v.                                          DECISION AND ORDER
                                                            14-CV-96S
NORTHWEST SAVINGS BANK and
THOMAS K. CREAL IV,

                              Defendants.


## I. INTRODUCTION

On January 10, 2014, Plaintiffs Randall Benderson and Benderson Development

Company, LLC (collectively, "Plaintiffs") commenced this civil action against Northwest

Savings Bank ("Northwest") and Thomas K. Creal IV (collectively, "Defendants") for

breach of agreements between the parties related to the negotiation and purchase of

certain notes and mortgages.  Plaintiffs filed a Summons and Complaint in the Supreme

Court for the State of New York, Erie County.  Defendants removed the action to this

Court, asserting federal subject matter jurisdiction based upon diversity of citizenship

and amount in controversy. 28 U.S.C. § 1332(a).  (Notice of Removal and Complaint,

Docket No. 1).  Pending before this Court are Defendants' Motions to Dismiss Plaintiffs'

Complaint.  (Docket Nos. 6, 7).  The Motions are fully briefed and the Court finds that

oral argument is not necessary.  For the reasons stated below, Defendant Northwest's

Motion is GRANTED IN PART and DENIED IN PART, and Defendant Creal's Motion is

GRANTED.

## II. FACTS[1]

The following facts, drawn from the Complaint and the Confidentiality and Non-Disclosure Agreement attached thereto ("Confidentiality Agreement"; Exh. A to Complaint), are assumed true for purposes of Defendants' Motions to Dismiss.[2]

Plaintiff Randall Benderson is the president of Plaintiff Benderson Development Company, LLC.  (Confidentiality Agreement p. 5).  Defendant Thomas K. Creal IV is a vice president of Defendant Northwest. (Complaint ¶¶ 3, 4).   In July 2013, Plaintiffs contacted Northwest about the possibility of purchasing certain notes and mortgages, stated to be worth approximately $4,000,000.  (Id. ¶¶ 11, 13).  The notes and mortgages were secured by a property at 3770 Union Road in Cheektowaga, New York, owned by 3770 Union Road, LLC, and/or Paul F. Rosa (Rosa).  (Id. ¶¶ 5, 12).  In contemplation of their negotiations, the parties entered into the Confidentiality Agreement on or about July 31, 2013 (Id. ¶ 14), which was executed by Benderson and Creal (Confidentiality Agreement p. 5), and states that it is:

> "by and between Northwest Savings Bank (including its parent, subsidiaries and affiliated companies, collectively, "Northwest"), and Mr. Randall Benderson … (including any affiliated companies, trusts or legal entities he has an interest in, collectively, the "Recipient")."  (Id. p. 1)

It further provides, in relevant parts:

> "WHEREAS, Northwest and the Recipient are exploring the possible sale of loans and of certain other assets of Northwest (the "Project")" (Id.)

---

[1]  The parties' submissions in support of and in opposition to the instant motion, include:
    (1) Defendant Northwest's Memorandum in Support of Motion ("Northwest Memo.", Docket No. 6-1) and Reply Memorandum ("Northwest Reply", Docket No. 13).
    (2) Defendant Creal's Memorandum in Support of Motion ("Creal Memo.", Docket No. 7-1) and Reply Memorandum ("Creal Reply", Docket No. 12).
    (3) Plaintiff's Memorandum in Opposition to Motion ("Opposition", Docket No. 11).

[2]  The Confidentiality Agreement is attached to and referenced in the Complaint.  Accordingly, the Court will consider it in connection with this motion to dismiss.  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

"SECTION 4.   Neither party will disclose to any person or entity the fact that the Confidential Information has been made available, that discussions or negotiations are taking place or have taken place between the parties concerning a possible sale or any of the terms, conditions, or other facts with respect to any such possible sale, including the status thereof."  (<u>Id</u>. p. 2)  ("Section 4").

"SECTION 13.   This Agreement does not constitute an agreement or commitment to sell or to purchase any assets.   Any arrangement relating to the Project is subject to approval by the senior management of Northwest and Recipient and the execution and delivery of a definitive agreement.   Northwest and Recipient reserve the right to, in its sole discretion, reject any and all proposals regarding the Project and terminate discussions, and either may negotiate and enter into an agreement with another party with respect to any transaction, including one similar in nature to or containing part or all of the Project, at any time and without notice to the other."  (<u>Id</u>. p. 4)  ("Section 13").

The parties' negotiations took place primarily from August 2013 through December 2013.  (Complaint ¶¶ 16-20).  During the same time frame, Benderson and Rosa were in contact about an unrelated matter.  (<u>Id</u>. ¶ 21).  In an email to Benderson in December 2013, Rosa indicated that he knew Plaintiffs had been negotiating with Defendants regarding the "mortgage on Union Road."  (<u>Id</u>. ¶ 22).  Plaintiffs had not disclosed any information about the negotiations to third parties and thus believed that Rosa learned the information from Defendants.  (<u>Id</u>. ¶ 23).  Plaintiffs allege that Benderson "became concerned" that Defendants were using their negotiations with Plaintiffs as leverage to obtain a better deal elsewhere.  (<u>Id</u>. ¶ 24).  Later in December, Benderson called Creal, who confirmed that Defendants had told Rosa about their negotiations with Plaintiff.  (<u>Id</u>. ¶ 25).  Creal stated Defendants' position that the Confidentiality Agreement only limited Plaintiffs' ability to disclose confidential information but not Defendants' ability to do so.  (<u>Id</u>. ¶ 26).  Plaintiffs disagreed with this assertion, but continued to negotiate with Defendants for the purchase of the notes and

mortgages.  (Id. ¶ 27).   Benderson asked Creal to get back to him with a proposed price.  (Id.).  On or before December 16, 2013, Benderson and Creal agreed to a deal over the phone: Creal made an offer to sell the notes and mortgages to Benderson Development Company, LLC for $3,050,000, with Plaintiffs to receive $70,000 that was then being held in escrow. (Id. ¶ 28).  Benderson told Creal that he had a deal, and they agreed to close as soon as possible.  (Id. ¶ 29).   The parties exchanged names of closing attorneys, who were subsequently in contact with each other about finalizing the deal and preparing closing documents.  (Id. ¶¶ 30-34).  Then, on or about December 30, 2013, Creal called Benderson to tell him that Northwest would not go forward with the agreement to sell the notes and mortgages and that the Defendants had decided to go "in a different direction." (Id. ¶ 35).

### III. DISCUSSION AND ANALYSIS

Plaintiffs assert two causes of action.  The first claim is against Northwest for breach of an oral contract for the purchase of the notes and mortgages.  Plaintiffs maintain that Benderson and Creal reached an enforceable oral agreement, which Northwest subsequently breached by refusing to go forward with the sale.  (Id. ¶¶ 38, 39).   The second cause of action is for breach of the Confidentiality Agreement. Plaintiffs bring this claim against both Northwest and Creal for disclosing the fact of the parties' negotiations to Rosa. (Id. ¶ 42).   Defendants have filed Motions to Dismiss Plaintiffs' causes of action for failure to state a claim.  (Docket Nos. 6,7).

### A.   Standard of Review Rule 12(b)(6) Motion to Dismiss

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.

Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  The court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  This analysis includes the facts and allegations in "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

The complaint need not contain "detailed factual allegations," but the plain statement must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 545.  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 679; Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

The court's examination is context specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.  First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away.  Id. at 678-9.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to

5

determine whether they "plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

"Where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct," the complaint fails to state a claim. <u>Id.</u>

**B.    Claim I: Breach of the Alleged Oral Agreement**[3]

Under New York law, a breach of contract claim is established through proof of

"(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the

defendant, and (4) damages." <u>Fischer & Mandell, LLP v. Citibank, N.A.</u>, 632 F.3d 793,

799 (2d Cir. 2011).  Northwest argues that, in addition to being indefinite and uncertain

in its material terms (Northwest Memo. p. 9), under any characterization the alleged oral

agreement for the sale of notes and mortgages is unenforceable for lack of a writing,

pointing to the New York statutes of frauds (Northwest Memo. pp. 4,7,8):  New York

General Obligations Law § 5-703 (an interest in real property); New York Uniform

Commercial Code § 1-207[4] (transfer of personal property for more than $5000); and NY

UCC §§ 5-701(b) ("qualified financial contract" exemption to NY UCC § 1-207, requiring

"sufficient evidence" that a contract was made).  Indeed, throughout their Opposition,

Plaintiffs explicitly refer to the alleged agreement as an oral contract.  (See, e.g.,

Opposition pp. 1,8)

Ultimately, this Court needs to look no further than the Confidentiality Agreement,

which the parties agreed to and executed at the outset of their negotiations, to

determine that Plaintiff has alleged neither a contract nor a breach.  First, while Plaintiffs

---

[3] SECTION 8 of the Confidentiality Agreement provides that "Pennsylvania law governs the validity, legality, and construction of this Agreement or any of its provisions . . . ."  (Confidentiality Agreement p. 3).  In their submissions, however, the parties cite almost exclusively to New York case law (See Opposition p.7; see generally Northwest Memo., Creal Memo.).  Thus, given the parties implied consent, the Court will apply New York substantive law in this case.  <u>See Krumme v. WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000) (where parties briefs assume New York law controls, such "implied consent ... is sufficient to establish choice of law"), quoting <u>Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton</u>, 888 F.2d 239, 242 (2d Cir. 1989).

[4] Formerly NY UCC § 1-206.

adequately plead that Northwest made an oral offer that Plaintiffs accepted, and they engage in a lengthy analysis of what the oral agreement could be considered under New York law, the parties explicitly agreed in the Confidentiality Agreement that any "arrangement" resulting from their negotiations would be "subject to … execution and delivery of a definitive agreement."   (Section 13).   Here, the only reasonable interpretation of Section 13 is that the parties intended to "execute and deliver" a *written* agreement.   See Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) ("It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion."), citing White v. Cont'l Cas. Co., 9 N.Y.3d 264, 267 (2007); Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659 (1982) ("when the words are clear and unambiguous, the intent is to be discovered only from the express language of the agreement").

Although the mere intention to reduce an agreement to writing need not negate an otherwise valid oral agreement, "if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80, (2d Cir. 1985); Essner v. Shoemaker, 393 Pa. 422, 143 A.2d 364 (1958) ("if the parties themselves contemplate that their agreement cannot be considered complete, and its terms assented to, before it is reduced to writing, no contract exists until the execution of the writing").   Therefore, there was no enforceable contract to sell the notes and mortgages.

Second, also in Section 13, the parties specifically reserved their rights right to "terminate discussions … at any time and without notice to the other," including to enter into a similar deal with another party. (Section 13). According to the Complaint, Defendants backed out of the deal before the written agreements were "executed and delivered," therefore, they did not breach any enforceable agreement regarding the sale of the notes and mortgages. Consequently, Count I for breach of the alleged oral agreement is DISMISSED.

## C.     Claim II: Breach of the Confidentiality Agreement by Northwest and Creal

On the other hand, the parties also agreed not to disclose the facts or contents of their negotiations. (Section 4). In Count II, Plaintiffs allege Northwest and Creal breached the Confidentiality Agreement by telling Rosa about their negotiations. (Complaint ¶¶ 22, 25). In fact, Plaintiffs' pleading alleges that Creal admitted as much. (Id. ¶ 25). Plaintiffs argue that the confidential disclosures led Defendants to back out of the deal. (Id. ¶ 36; Opposition pp. 21-22).

### 1.     Defendant Northwest

Defendant Northwest moves to dismiss Count II arguing that Plaintiffs fail to allege plausible facts suggesting that they were damaged as a result of the breach. (Northwest Memo. pp. 10-11). Giving all favorable inferences to the facts alleged in the Complaint, the Court finds that Plaintiff states a claim for breach of the Confidentiality Agreement. Plaintiffs sufficiently plead: (1) the existence of enforceable Confidentiality Agreement; (2) that Plaintiffs did not disclose confidential information; (3) that Creal admitted to sharing the information with Rosa; (4) following the breach, they lost the deal that the Confidentiality Agreement was designed to protect. Yet, Northwest contends no damages or causation can be inferred from the conduct alleged.

First, Northwest argues that Plaintiffs' continued negotiations with Northwest after learning of the alleged breach suggest that they were not harmed.  (Northwest Memo. p. 10).  While Defendants are free to raise that factual assertion, the Plaintiffs' decision to continue negotiations does not waive their claim for breach of the Confidentiality Agreement.  Cf. Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 103 F.Supp.2d 711, 737 (S.D.N.Y. 2000) (Under New York election of remedies, "a non-breaching party who elects to continue to perform a contract may still sue later and recover damages solely for the breach of the agreement, provided that it gives notice of the breach to the breaching party.").  Even stripping away the conclusory allegation in the Complaint that "Apparently, Mr. Benderson's earlier concerns – that the defendants might have been using their negotiations and agreements with the plaintiffs as leverage to obtain a better deal elsewhere – were justified," this Court "using its common sense" finds that Plaintiffs have alleged the plausible existence of a connection between the breach of a material term of the Confidentiality Agreement with Northwest's termination of the underlying transaction.  (Complaint ¶ 36); Iqbal, 556 U.S. at 678-9.

In addition, Northwest argues that Creal's disclosure to Rosa cannot be causative because Rosa was not a competing purchaser, rather the mortgage-holder and owner of the property.  (Northwest Reply p. 10).  Nonetheless, the limitations in Section 4 are unqualified: either party is prohibited from disclosing the fact of the negotiations to "any person or entity."  In this case, Plaintiffs have sufficiently alleged each of the elements to state a cause of action for breach of the Confidentiality Agreement.  If they cannot meet the requisite burden of proof and ultimately establish a causal connection between Northwest's alleged breach of the Confidentiality Agreement

9

and their own damages, then Plaintiffs' contract claims will certainly fail. This and whether Plaintiffs will be able to prove an amount of damages to the requisite degree of certainty are questions for a later date. Thus, Northwest's Motion to Dismiss Claim II is DENIED.

### 2. Defendant Creal

Defendant Creal also moves to dismiss Count II. Creal asserts that Plaintiffs fail to state a claim for breach of the Confidentiality Agreement against him because he is not a party to the contract and Plaintiffs fail to allege damages. (Creal Memo. pp.1-2). The Court will address the non-party liability issue.

"It is well established that officers or agents of a company are not personally liable on a contract if they do not purport to bind themselves individually." <u>Georgia Malone & Co., Inc. v Rieder</u>, 86 A.D.3d 406, 408, 926 N.Y.S.2d 494 NY (1st Dep't 2011); <u>Electron Energy Corp. v. Short</u>, 408 Pa.Super. 563, 567, 597 A.2d 175, 177 (1991), aff'd, 533 Pa. 66, 618 A.2d 395 (1993). ("It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract.") Here, the Confidentiality Agreement states that it is made "by and between Northwest Savings Bank (including its parent, subsidiaries and affiliated companies, collectively, "Northwest"), and Mr. Randall Benderson … (including any affiliated companies, trusts or legal entities he has an interest in, collectively, the "Recipient"). (Confidentiality Agreement p. 1). Furthermore, Creal's name appears nowhere, other than on the signature page beneath "NORTHWEST SAVINGS BANK" where he signed as Vice President. (<u>Id.</u> p. 5). Accordingly, no such intent to bind Creal individually appeared in the Confidentiality Agreement. <u>See</u> <u>Georgia Malone</u>, 86 A.D.3d at 408. (affirming dismissal of contract claim against corporate officer where he "signed the contract once,

rather than signing twice, which is the general practice when an individual wishes to be personally bound").  Moreover, Plaintiffs' pleadings refer to Creal as a representative of Northwest and contain no allegations that he acted in his individual capacity.  (See, e.g. Complaint ¶¶ 26-29, 38-39).

Finally, Plaintiffs suggest it is premature to dismiss Creal from the lawsuit because Northwest could later raise the defense that Creal was acting outside the scope of his authority when he disclosed the parties' negotiations.  (Opposition p. 23). This assertion is speculative, and Northwest does not raise such a defense in its Motion.   Here, absent any plausible factual allegation that Creal signed the contract in his individual capacity, the plain language of the Confidentiality Agreement states that Northwest and Randall Benderson (and his affiliates) are the parties to it.  Accordingly, Count II for the breach of Confidentiality Agreement against Creal is DISMISSED.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs' breach of contract claim in Count I must be dismissed for failure to plead an enforceable agreement to purchase the notes and mortgages.  Plaintiffs' breach of contract claim against Creal in Count II is also dismissed for failure to state a claim because Creal signed the Confidentiality Agreement as a corporate officer and was not individually bound.   Defendant Northwest's Motion to Dismiss is therefore granted in part and denied in part, and Defendant Creal's Motion to Dismiss is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant Northwest's Motion to Dismiss (Docket No. 6) is GRANTED IN PART and DENIED IN PART; and that Defendant Creal's Motion to Dismiss (Docket No. 7) is GRANTED.

SO ORDERED.


Dated:    July 8, 2015
          Buffalo, New York


                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                      United States District Judge